UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUSTIN T. CUMMINGS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRANK BISIGNARO, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 1:24-cv-267-AZ |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Justin T. Cummings' appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] For the reasons discussed, the Court agrees with the Commissioner that the Administrative Law Judge's ("ALJ") written decision was supported by substantial evidence and should be affirmed.

### Background

Plaintiff Cummings was 24-years old at the onset of the alleged disability, June 29, 2020. A.R. 40.[2] Cummings attended high school through ninth grade, when he was expelled. A.R. 77. Due to this early onset, he has no relevant past work. A.R. 40.

Cummings filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on November 16, 2021. A.R. 18. His claims

---

[1] On September 9, 2024, both parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 13.

[2] Citations to the Administrative Record, filed at DE 9, are throughout as "A.R."

were denied in the initial application and upon reconsideration, and Cummings thereafter requested a hearing before an ALJ. *Id.* On June 1, 2023, the ALJ held a telephonic hearing at which Cummings and a Vocational Expert testified. A.R. 15.

Soon after the hearing started, the ALJ had the following discussion with Cummings:

> Q: Do you – now, there's in a notation in there that you made meth, you cook meth. Do you still cook it?
>
> A: No.
>
> Q: When is the last time –
>
> A: I have been –
>
> Q: – you –
>
> A: I've been sober since I basically went into incarceration in January [2023].
>
> Q: Okay. Up until January, how often were you using meth?
>
> A: It was once a day, every day.

A.R. 59. Cummings went on to explain that he had used methamphetamines every day since he was 18 but also had a "two-year stretch of sobriety" and "another probably year-and-a-half stretch [of sobriety] on that." Cummings was 27 years old at the time of the hearing. A.R. 40.

On October 16, 2023, the ALJ issued a written opinion denying benefits. A.R. 15-51. Plaintiff timely appealed to the Appeals Council and on May 3, 2024, the Appeals Counsel denied Plaintiff's Request for Review. A.R. 1. Plaintiff timely filed his complaint for District Court review.

Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Cummings was disabled. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 29, 2020. A.R. 20.

At step two, the ALJ determined that Cummings suffered from the following severe impairments: "mild intellectual disability, other stimulant dependence-uncomplicated, substance/medication induced bipolar and related disorder/bipolar disorder-unspecified, other stimulant dependence with stimulant induced mood disorder, hearing impairment, other specific personality disorder, and residual of remote knee surgery (20 CFR 404.1520(c) and 416.920(c))." A.R. 21. The ALJ held this significantly limits Cummings' ability to perform basic work activities as required by SSR 85-28. *Id.* The ALJ found his right index finger amputation to be non-severe. *Id.* Based on physical examination findings, Cummings was able to pinch, grasp, and manipulate objects without difficulty. A.R. 1636, 1782-82. The ALJ also noted that state agency consultants noted no manipulated limitations of function. A.R. 21, 151-61.

At step three, the ALJ concluded that Cummings does "not have an impairment or combination of impairments that meet or medically equals the severity of" any applicable Listing which would presumptively entitle him to a finding of disability. A.R. 21. The ALJ notes that Cummings' post-surgical MRI and x-ray of his

3

knee were unremarkable. *Id.,* A.R. 1456, 1825. The ALJ also used the "paragraph B" functional assessment of mental disorders criteria to consider the severity of Cummings' mental impairments both singly and in combination. A.R. 21. An extensive review of multiple exhibits and medical evidence led the ALJ to conclude that because Cummings' mental impairments do not cause a least two "marked" limitations, or one "extreme" limitation, paragraph B was not satisfied. A.R. 21-22.

The ALJ further looked at Cummings' alleged intellectual disorder. To determine if the disorder fits listing 12.05, three elements must be shown: significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and whether the disorder manifested before age 22. A.R. 23. These elements were "not met because the objective medical evidence fails to show the above criteria." *Id.* Because Cummings "was able to complete standardized testing, advocate for himself, work toward academic objectives, and take care of his personal needs without assistance…neither remote evidence nor most recent medical evidence showed the claimant has marked limitations in any of his domains of mental function." A.R. 23-24, 644-58. The ALJ also noted that Cummings' "intelligence was considered above average when sober." A.R. 24.

The ALJ devoted a considerable section of his written opinion on Cummings' testimony and contradictory statements throughout the medical evidence. Though there was mention of knee pain while sitting and issues focusing, Cummings testified he spends about 50% of his day playing video games. *Id.*, A.R. 62-63. In his testimony, Cummings acknowledges he used methamphetamines daily up to his 2023

4

incarceration, but also claims that he stopped using it between ages 18 to 22. *Id.* Further, in treatment notes from March 2027, he claims he stopped using methamphetamines just three months prior to March 2027, when he would have been 22. *Id.*, A.R. 1039. He also testified that no one told him marijuana or methamphetamine usage makes his emotional issues worse or that he had a substance induced mood disorder, despite treatment notes to the contrary and his own admission as such in May 2023. A.R. 24. Regarding alleged memory issues and how drugs affected his memory, the ALJ found Cummings "less than forthcoming" and that his testimony "actually undermined the persuasiveness of his allegation." A.R. 25. The ALJ documents thoroughly Cummings' many inconsistent statements regarding his drug usage, supposed drug cessation, failure to follow prescribed medications schedules, and inconsistent or inaccurate statements to the ALJ and medical providers. A.R. 24-27.

Of particular note was Cummings' consultative psychological examination on March 29, 2022. He reported at the exam that he experienced hallucinations, paranoia, suicidal ideation and memory deficits. A.R. 28. The examiner made appropriate diagnoses of ADHD, anxiety disorder, schizoaffective disorder, severe cannabis use disorder, but only mild amphetamine use disorder. *Id.* Despite Cummings' other reports of methamphetamine usage as "not as often" and reported use in November 2021, he apparently told the examiner he had not used methamphetamines for one entire year. *Id.* Considering this "taint[ed]…understanding" along with Cummings' admitted noncompliance with his

5

prescribed medications, the ALJ found this consultative psychological exam unpersuasive. *Id.* Given the totality of the evidence, including the apparent admission of more prevalent methamphetamine usage at his hearing, the ALJ determined that "[t]he above facts do not establish greater limitations of function for twelve months in duration with respect to the B and C criteria," but only that Cummings does poorly when on drugs and noncompliant [with prescriptions and consultations], and much improved when not. A.R. 29.

At step four, the ALJ determined Cummings' Residual Functional Capacity (RFC) as:

> [P]erform[ing] medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to lifting, carrying, pushing and pulling 25 pounds frequently and 50 pounds occasionally. He can sit for six hours in an eight hour work day and can stand and/or walk for six hours in an eight hour work day. He should not climb ropes, ladders or scaffolds. He can frequently kneel, crouch, and crawl. He can frequently bend and stoop. He can frequently climb ramps and stairs. He should not work upon wet and slippery surfaces. He can perform the balance required of such activities. He should not perform work at exposed heights and open and dangerous machinery such as those with fast moving and exposed blades and open flames. No work activity involving very loud work environments, level 5. He is unable to perform complex tasks. He can perform simple, routine tasks and instructions throughout the work day. He can learn tasks through short demonstration, or when beyond short demonstration, within up to 30 days. He can engage in frequent brief interaction with others. He can appropriately receive task instructions and briefings from the supervisor. Work place changes should be gradual and expected.

A.R. 29. The ALJ stated, as is standard, that he "considered all symptoms … as consistent with the objective medical evidence and other evidence" in arriving at this RFC. *Id.* He found the "allegations concerning the intensity, persistence and limiting

6

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 30.

With the RFC in mind, at step four, the ALJ concluded that Cummings has no past relevant work, is a "younger individual age," has a limited education, and transferability of job skills is not an issue because he has no past relevant work. A.R. 40. Based on his RFC and the testimony of the Vocational Expert, the ALJ determined Cummings could perform jobs such as hand packer, prep cook, and routing clerk. A.R. 41. Because the ALJ determined that Cummings could perform work that exists in significant numbers in the national economy, the ALJ concluded that he was not disabled. *Id.* Accordingly, the ALJ did not need to proceed to step five and denied Cummings' claim.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence

7

in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the

8

administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

Cummings argues two errors on appeal: (1) the ALJ erred when finding an examining physician opinion as not persuasive and failing to consider a medical opinion; and (2) the ALJ erred by failing to include all supported limitations in the physical RFC. DE 18 at 6.

On the first issue, Cummings argues the ALJ substituted his medical opinion for that of Dr. Boen's when he decided the consultative physiological examination was tainted by Cummings' incomplete disclosure of his drug use. *Id.* at 6-7. Cummings pins his argument on the fact that Dr. Boen did not note that Cummings was "high" at the time of the exam. *Id.* at 9-10. He further argues that the ALJ's focus on his noncompliance with prescription medication is misplaced because there is no evidence that the symptoms Dr. Boen noted would be alleviated had Cummings been in compliance. *Id.* Cummings also argues that the ALJ should have considered Dr.

9

Boen's earlier evaluation in 2016. Cummings believes that Dr. Boen's 2016 evaluation supports the conclusions made in the 2022 evaluation, and that it contradicts the ALJ's findings on Cummings' intelligence.

First, as to the intelligence portion of the 2016 evaluation, Cummings claims that the ALJ "never consider[ed] Dr. Boen' 2016 evaluation." DE 18 at 12. Because an ALJ "must explain how persuasive [he] find[s] all of the medical opinions," this constitutes harmful error and requires a remand. *Id.* (citing *Willis v. Acting Comm'r of Soc. Sec.*, 2022 WL 2384031, \*3 (N.D. Ind. June 30, 2022). This is easy to address, as the ALJ does in fact cite to Dr. Boen's 2016 evaluation, Exhibit 3F, at least four times in his written opinion. A.R. 24. The ALJ addresses the intelligence testing done by Dr. Boen and notes the results. *Id.* He concludes from this report and another report, Exhibit 19F, that Cummings has no marked limitations in mental function and is above average intelligence when sober. A.R. 24. The ALJ does not need to discuss every statement from a medical opinion, but only the relevant portions, and he did so here.[3]

Cummings asks this Court to reweigh the evidence and come to a different conclusion than the ALJ with regard to the 2022 evaluation. The ALJ found the report unpersuasive, and extensively documented why Cummings' contradictory statements

---

[3] Remoteness is also an issue for Cummings' argument. "Certainly, in those instances when a prior medical opinion is too stale to move the needle one way or the other, the ALJ is not required to address it." See *Kelley v. Colvin*, No. 24-1587, 2025 WL 25959, at \*3 (7th Cir. Jan. 3, 2025) (citing *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (observing that the value of a doctor's opinion was time-limited); *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (ALJ properly discounted opinion in part because it was rendered well before the relevant period).

and misrepresentations, both to the ALJ and the medical examiners, called into doubt the reliability and accuracy of Dr. Boen's report. An ALJ is permitted to weigh the persuasiveness of medical opinions. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."). Here, the sources presented by Dr. Boen were Cummings' own statements of his condition, which the ALJ already found to be so inconsistent as to be detrimental to his allegations. An ALJ may also analyze the supportability of a medical opinion. Supportability "means that ALJs should give more weight to medical opinions with more internal explanation and support than those without." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023). Here, Dr. Boen's internal support for his opinion was undoubtedly skewed by Cummings' misrepresentation as to the frequency and recency of his methamphetamine use. As to the effect of compliance, the ALJ cites to a plethora of medical records stating that Cummings' limitations are alleviated by compliance. *See generally* A.R. 35, 1721-68. Further, the ALJ noted that when sober, Cummings' issues with concentration, staying on task, and interacting were decreased. A.R. 22, 26, 1642-1720. There is more than enough evidence here to substantially justify the ALJ's reasoning and create a logical bridge to his conclusion.

Cummings' second issue is that the ALJ did not include limitations in the physical RFC from multiple consultant opinions. DE 18 at 13. Two opinions, one from

11

Dr. Jacob DeWitt and one from Dr. Ragheavendra Rao,[4] concluded certain physical limitations with Cummings' knees and legs. A.R. 39. These affected his walking, squatting, and standing. *Id.* As to Dr. DeWitt's opinion, the ALJ concluded the opinion was unpersuasive because it was vague[5] and not consistent with more objective medical evidence; diagnostic imaging showed no abnormalities and Cummings exhibited normal range of motion. A.R. 39, 1445, 1456, 1789, 1825. The ALJ came to similar conclusions on Dr. Rao's report, with particular focus on both doctors' reliance on Cummings' own subjective statements. *Id.* For example, Dr. DeWitt notes how Cummings "reports" or "endorses" pain. A.R. 1638; *see also Rios v. Comm'r of Soc. Sec.,* 1:22-cv-00117, 2023 WL 6364342, at *3-4 (N.D. Ind. Sept. 29, 2023) (ALJ did not err by finding opinion of consultative examiner less persuasive than that of state agency physicians because it appeared to be based primarily on subjective complaints).

Cummings further argues that the ALJ played doctor by evaluating the medical imaging rather than following the medical opinions. DE 18 at 15. Had the medical records the ALJ relied on consisted of literal MRI or x-ray images, Cummings would have a stronger point. But instead, the ALJ was considering the doctor's notes *about* the images, not the images themselves. For example, the ALJ relied on Exhibit

---

[4] Plaintiff refers to her as "Dr. Roe" or "Dr. Roa." This is a scrivener's error.

[5] While the doctors indicated whether Cummings' limitations were "mild," "moderate," or "severe," they did not indicate what Cummings could or could not do despite his limitations. *See* 20 C.F.R. § 404.1513(a)(2) (A medical opinion is a statement from a medical source about what you can still do despite your limitation(s) and whether you have one or more impairment-related limitations or restrictions).

12

13F/21, which states "MRI both knees came back normal study" and "X-rays [of both knees] show no significant abnormalities are identified, everything is well-aligned and no fractures." A.R. 1443. The ALJ weighed these records against the other opinions, found these more persuasive, and explained his reasoning in doing so.[6]

Cummings lastly argues that the ALJ's failure to discuss Dr. Bacchus' opinion requires a remand. Cummings is correct that the ALJ does seem to completely disregard Dr. Bacchus' medical opinion. However, this opinion occurred in 2016, and an ALJ does not need discuss evidence which is "too stale to move the needle." *See Kelley v. Colvin*, No. 24-1587, 2025 WL 25959, at *3 (7th Cir. Jan. 3, 2025) (citing *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (observing that the value of a doctor's opinion was time-limited). Essentially, an ALJ cannot and should not be expected to perfectly analyze every piece of evidence in the hundreds-of-pages record. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Bremer v. Comm'r of Soc. Sec.*, No. 1:22-CV-00272-SLC, 2023 WL 6284630, at *8 (N.D. Ind. Sept. 27, 2023) (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (collecting cases)). Cummings has not presented enough to move the needle or show this report would have changed the ALJ's determination. Nor has the ALJ "ignore[d] an entire line of evidence that supported a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (citation omitted).

---

[6] Cummings further complains that the ALJ found Dr. Small's opinion persuasive but Dr. Corcoran's opinion unpersuasive. DE 18 at 17. The ALJ explained his reasoning and created a logical bridge. For the same reasons as above, this argument is unavailing.

He discussed Cummings' issues with standing and sitting, but in light of the objective medical evidence and Cummings' admission to spending 50% of his day sitting playing video games, the ALJ found this limitation unconvincing.

Cummings strongly disagrees with how the ALJ weighed and considered the evidence and asks this Court to do the same. That is not this Court's role. There is substantial evidence to support the ALJ's conclusions and no issues of law to demand a remand.

## Conclusion

For the reasons discussed, the Court hereby **DENIES** the relief requested in Plaintiff Justin T. Cummings' Opening Brief [DE 18] and **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 11th day of September 2025.

> /s/ *Abizer Zanzi*
> MAGISTRATE JUDGE ABIZER ZANZI
> UNITED STATES DISTRICT COURT